UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO|
WESTERN DIVISION

| | | |
|---|---|---|
| TRUE NORTH ENERGY, LLC., | ) | CASE NO. 3:10 cv 01100-JZ |
| | ) | |
| Plaintiff, | ) | HONORABLE JACK ZOUHARY |
| | ) | |
| v. | ) | |
| | ) | |
| CHICAGO TITLE INSURANCE | ) | **DEFENDANTS' REPLY IN SUPPORT** |
| COMPANY, et al., | ) | **OF BILL OF COSTS** |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.      INTRODUCTION.

Defendants Chicago Title Insurance Company and Chicago Title of Colorado, Inc.

(collectively, "Chicago Title") filed a Bill of Costs, to be paid by Plaintiff True North Energy,

LLC ("True North").  Typical of its prior conduct in this litigation, True North has unreasonably

opposed the Bill of Costs, *in toto*, with arguments that lack any basis in fact or in law.  This sort

of conduct wasted an enormous amount of Chicago Title's money required to defend this

baseless lawsuit, and, now again, True North is causing Chicago Title to expend thousands of

dollars in additional legal fees to obtain the simple and indisputable award of costs to which it is

entitled as the clear and unambiguous prevailing party.

The objections to the Bill of Costs asserted by True North fail, because (a) True North

fails to set forth facts and circumstances sufficient to defeat the presumption in favor of awarding

costs to a prevailing party under Fed. R. Civ. P. 54(d)(1), and (b) True North's arguments against

the taxation of specific costs fail to establish that the amounts sought by Chicago Title are not

properly taxable or that they are unreasonable and/or unnecessary.  As such, taxable costs in the amount of $14,718.88[1] should be taxed against True North.

## II.     LAW AND ARGUMENT

Federal Rule of Civil Procedure 54(d)(1) allows an award of costs to the prevailing party in litigation.  Under the rule, costs taxable under 28 U.S.C. § 1920 "should be allowed to the prevailing party" unless a federal statute, the Civil Rules, or a court order provides otherwise.  *Id.* The Sixth Circuit recognizes that the language of Rule 54(d) "creates a presumption in favor of awarding costs . . . ."  *White & White, Inc. v. American Hosp. Supply Corp.*, 786 F.2d 728, 730 (6th Cir. 1986).  Indeed, the Sixth Circuit holds that pursuant to the rule, the "prevailing party is *prima facie* entitled to costs[.]"  *Lewis v. Pennington*, 400 F.2d 806, 819 (6th Cir. 1968) (quoting *Lichter Foundation, Inc. v. Welch*, 269 F.2d 142, 146 (6th Cir. 1959)).

Furthermore, if an unsuccessful party "seeks to be excused from the burden of paying costs, it is incumbent upon her to show circumstances sufficient to overcome the presumption favoring an award of costs to the prevailing party."  *Pion v. Liberty Dairy Co.*, 922 F.Supp. 48, 49 (W.D. Mich. 1996) (citing *White & White, Inc.*, 786 F.2d at 732); *see also Parsons v. CSX Transp., Inc.*, No. 3:08 CV 2461, 2010 U.S. Dist. LEXIS 103443, *3 (N.D. Ohio Sept. 30, 2010) ("In the Sixth Circuit, the unsuccessful party has the burden to show circumstances sufficient to overcome the presumption favoring an award of costs to the prevailing party.")  In short, the party objecting to the taxation of costs has the burden of persuading the court that taxation would be improper.  *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 420 (6th Cir. 2005); *White & White, Inc.*, 786 F.2d at 732.  Here, True North failed to meet its burden of showing costs

---

[1] The total sought has been reduced because, for reasons set forth below, Chicago Title withdraws its request to tax the cost of minuscripts ($50.00) and for a portion of the lodging costs ($198.57) for Jerry Green which relate solely to his service as client representative at trial.

should not be taxed under the circumstances of this case.  Further, the costs sought by Chicago Title are taxable and were reasonable and necessary.

**A.  This Was Not A "Close And Difficult" Case.**

True North does not dispute that it "did not prevail in this action."  (Objection,[2] p. 3.) Rather, it argues that the Court should use its discretion to deny costs to Chicago Title because True North's claims "were neither frivolous nor vexatious, and it presented several close issues of fact and law."  (*Id.*)  Contrary to True North's assertions, the **majority** of its claims were both frivolous and vexatious, and the factual and legal issues raised were far from close.

This case is distinguishable from "close and difficult" cases where the denial of costs were upheld by the Sixth Circuit.  For example, in *United States Plywood Corp. v. General Plywood Corp.*, 370 F.2d 500 (6th Cir. 1966), a case involving a claim regarding the validity of a patent and counterclaims for patent infringement, it was found that it would be inequitable for one side to pay the other's costs where the court ruled that the defendant's patent was valid, but that there was no infringement by the plaintiff.  *Id.* at 508.  And, in *White & White, Inc.*, the court declined to order costs where the trial lasted 80 days and there were 43 witnesses, 800 exhibits, 15,000 transcript pages, and a 95-page opinion by the district court.  *White & White, Inc.*, 786 F.2d at 732.

Here, True North's First Amended Complaint asserted eight causes of action against Chicago Title.[3]  Only the two original claims—breach of contract and unjust enrichment—were

_____

[2] "Objection" means and refers to Plaintiff True North Energy, LLC's Objection To Defendants' Bill of Costs Filed With The Court (Dkt. # 102).

[3] True North's original Complaint [Dkt. # 1] asserted only breach of contract and unjust enrichment claims.  It was only after Chicago Title moved for dismissal of True North's original Complaint [Dkt. # 9] that True North filed an Amended Complaint [Dkt. # 13] creatively "modifying" its contract allegations to avoid dismissal of the original two contract claims and, in bad faith, creating and asserting six new intentional tort claims.

ultimately presented to the jury for decision and the jury never even considered the unjust enrichment claim.  *See* Dkt. # 96 (Jury Instructions Before Opening Statement) and Dkt. # 99-1 (Jury Questions).  The remaining claims (Counts III through VIII) represented True North's frivolous and vexatious attempt to stretch its contract-based claims into intentional tort claims that carried an *in terrorem* threat of punitive damages **intended** to increase the cost and risk of litigation and drive Chicago Title toward an unfair settlement.  The trumped-up intentional tort claims significantly increased the cost of litigation, but were ultimately disregarded at trial, either voluntarily based upon the Court's suggestion, or involuntarily via directed verdict.[4]  Unlike *United States Plywood Corp.*, True North was unsuccessful on each claim it asserted and Chicago Title prevailed 100% in all aspects.  *See* Dkt. 99 (Verdict for Defendants).  And, unlike *White & White, Inc.,* the trial lasted only a few days, there were only four witnesses (one via videotaped deposition), the jury delivered a unanimous 12-0 jury verdict consisting of a single sentence, and the Final Judgment Entry was less than a page.  *See* Dkt. # 99, 100.

Instead of finding difficult the simple factual determination of whether there was a contract and moving on to the unjust enrichment question, the jury vindicated Chicago Title 100% by quickly finding that the parties entered into a contract on the terms Chicago Title had alleged from the beginning of the parties' dispute, finding there was no need to even consider the unjust enrichment claim.  The fact that the jury decided against True North on its two remaining claims within a matter of two hours further demonstrates that there were no "close issues of fact and law."   Thus, True North's unsupported assertions are directly controverted by the record and

---

[4] There was never a factual or legal basis for the intentional tort claims, which Defendants contend were asserted in violation of Civil Rule 11 and which could further support a claim for abuse of process or malicious prosecution.  Even if True North litigated these claims in good faith, such a finding is irrelevant to a determination as to whether costs should be taxed.  *See Cooley v. Lincoln Electric Co.*, No. 1:05-CV-17734, 2011 U.S. Dist. LEXIS 22731, *170 (N.D. Ohio Mar. 7, 2011).

its sole argument that costs should not be taxed against it *in toto* fails.  *See, e.g., Hartford Financial Services Group, Inc. v. Cleveland Public Library*, No. 1:99 cv 1701, 2007 U.S. Dist. LEXIS 22528, *7 (N.D. Ohio Mar. 28, 2007) (finding that the case was not "sufficiently complex, or close and difficult, to deny [plaintiff's] costs *in toto*" where only three of defendant's seven counterclaims went to trial, the trial lasted only 20 days, and no novel issues of Ohio law were raised).

### B.  The Costs Sought Fall Within The Scope of 28 U.S.C. § 1920 And Are Not Unreasonable Or Unnecessary.

#### 1.  The Costs For Service Of Subpoenas Upon Ms. Lyden And Ms. Hendrick Were Not Excessive.

True North objects to amounts sought for service of deposition and trial subpoenas arguing they are "unreasonably large under the circumstances."  (Objection, p. 3.)  Offering no support for its assertion that "process servers in Toledo customarily serve a subpoena in the Toledo area for around $60.00," and failing to offer any explanation as to why the charges for service of subpoenas upon Ms. Hedrick are "excessive," True North improperly attempts to place the burden of proving reasonableness upon Chicago Title.  *Id.*

Whether the amount charged by the process server hired by Chicago Title to serve a trial subpoena upon Ms. Lyden exceeded amounts True North asserts—without support—is the "customary" charge in Toledo is irrelevant.  Indeed, Chicago Title is under no obligation to "shop around" for the best bargain.  The services were indisputably necessary, and Chicago Title requested the services and paid the amount charged by the providers assuming the charges were reasonable.  Chicago Title did not conduct itself with its vendors like True North did in this litigation, attempting to nickel and dime them in a bad faith effort to beat them down into

providing services at unreasonably low prices.  True North's argument is also belied by the fact that (as True North itself points out)[5] a Toledo-based company served the subpoena.

As to the service of Ms. Hedrick's deposition subpoenas, True North offers no argument as to why it "believes" the costs sought are "unreasonably large."   For this reason alone, True North's objection fails.  Furthermore, as True North is aware but fails to disclose, subpoenas for Ms. Hedrick's deposition had to be issued twice because the originally scheduled deposition had to be rescheduled to meet the convenience of the witness and counsel for True North, and only after Chicago Title was unable to obtain consent from Shell's counsel to accept service of the subpoenas.  True North could have easily assisted in securing the cooperation of its joint venture partner's counsel, but it would not do so.  Put simply, True North has failed to meet its burden.  As such, the full amount of the process server fees set forth in Chicago Title's Bill of Costs should be taxed against True North.

### 2.   The Cost of Teresa Hott's Deposition Transcript Is Taxable Even Though She Was Not A Witness At Trial.

True North's only argument against an award of costs to Chicago Title for the Teresa Hott deposition transcript is that she was not called as a witness at trial.  This is not a determining factor.  It is "undisputed that § 1920(2) permits the Court to award costs for court reporter fees for preparing a transcript" if the transcript is "necessarily obtained for use in the case."  *Cooley v. Lincoln Elec. Co*., No. 1:05-CV-17734, 2011 U.S. Dist. LEXIS 22731 *171 (N.D. Ohio Mar. 7, 2011).  This does not mean that the transcript must be "indispensible," only that it be "necessary to counsel's effective performance or the court's handling of the case."  *Id.* at 172 (quoting *Burton v. R.J. Reynolds Tobacco, Co.,* 395 F.Supp. 2d 1065, 1078-79 (D. Kan. Oct. 20, 2005).  Furthermore, "[s]imply because a deposition was not used or read into the record

---

[5] *See* Objection, p. 4 n.1.

at trial does not mean that a deposition was not necessary." *Hartford Financial Services Group, Inc.*, 2007 U.S. Dist. LEXIS 22528 at *12.  *See also, Sutter v. Gen. Motors Corp.*, 100 Fed. Appx. 472, 475 (6th Cir. 2004) (emphasis added) ("[T]here is no legal basis to support [the non-prevailing party's] claim that certain deposition transcripts were not necessary . . . because the [prevailing party] and the district court did not refer to them.").  "When a deposition is not actually used at trial or as evidence on some successful preliminary motion, whether its cost may be taxed generally is determined by deciding if the deposition reasonably seemed necessary at the time it was taken." *Baker v. First Tenn. Bank Nat'l Ass'n*, No. 96-6740, 1998 U.S. App. LEXIS 5769 (6th Cir. Mar. 19, 1998).

Both parties identified Ms. Hott as an individual who may have relevant knowledge regarding the parties' dispute.  *See* Dkt. # 82-1, p. 2; Defendant's Initial Disclosures (attached as Ex. A), p. 3.  Similarly, she was identified as a potential trial witness by Chicago Title even though she was not ultimately called to testify.  *See* Dkt. # 46.  Thus, at the time Ms. Hott's deposition was taken, either party could have used the deposition for any purpose, including dispositive motions or impeachment at trial.  As such, her deposition transcript was necessarily obtained for use in this case.  *See J-Way Leasing, Ltd. v. Amer. Bridge Co.*, No. 1:07 CV 3031, 2010 U.S. Dist. LEXIS 19390, *6 (N.D. Ohio 2010).  The apparent necessity of Ms. Hott's deposition is further demonstrated by the fact that **True North** noticed and took her deposition in Denver, Colorado, and also ordered its own copy of her deposition transcript.  It was not until two weeks before trial that True North indicated it would not be calling Ms. Hott as a witness, and by then the transcript had long been ordered, paid for and reviewed for anticipated use at trial.  For the same reasons why True North's purchase of the transcript was reasonable, so was

Chicago Title's purchase.  The costs of the transcript to Chicago Title should be borne by True

North, because the transcript was necessary in the litigation and Chicago Title prevailed.

### 3.  Costs For The Video Deposition of Patricia Lyden Are Taxable.

True North acknowledges (as it must) that videotape deposition costs are taxable pursuant

to 28 U.S.C. 1920,[6] but asserts that the costs of Ms. Lyden's video deposition should not be

taxed because videotaping was not necessary since Ms. Lyden's deposition was not "a trial

deposition" and she was within this Court's subpoena power. (Objection, p. 5.)  Regardless of

whether Ms. Lyden was within this Court's subpoena power, such costs are allowed.  True North

offers no legal authority to the contrary.  In the Sixth Circuit, the necessity of a videotape

deposition is determined when the deposition is taken and "the fact that a deposition is not

actually used at trial is not controlling."  *Sutter v. Gen. Motors Corp.*, 100 Fed. Appx. 472, 475

(6th Cir. 2004) ("[T]here is no legal basis to support [the non-prevailing party's] claim that

certain deposition transcripts were not necessary . . . because the [prevailing party] and the

district court did not refer to them." (*quoting Sales v. Marshall*, 873 F.2d 115, 120 (6th Cir.

1989))).

Here, Ms. Lyden's videotaped deposition was necessary at the time the deposition was

taken, and it was used at least once during trial for impeachment purposes.  Ms. Lyden was an

important witness, and the testimony given was necessary to develop and prove Chicago Title's

defenses.  The videotape deposition was necessary for use at trial.  Federal Rule of Civil

Procedure 32(a)(3) permits an adverse party to "use for any purpose the deposition of a party or

---

[6] *See, e.g., Hartford Financial Services Group, Inc.*, 2007 U.S. Dist. LEXIS 22528 at *16 ("In the Sixth Circuit, taxing both the cost of videotaping and transcribing a deposition are permissible."); *BDT Prods.*, 405 F.3d at 420 (affirming taxation of both the costs of videotaping and transcribing a deposition); *Ibrahim v. Food Lion*, 1998 U.A. App. LEXIS 14905 *6 (6th Cir. 1998) ("Section 1920 includes as taxable expenses the cost of videotaping a deposition").

anyone who, when deposed, was the party's officer, director, . . . or designee under 30(b)(6)." Furthermore, this Court's Local Rules encourage the use of videotaped depositions at trial.  *See* Local Rule 32.1(a).  Here, Ms. Lyden was True North's 30(b)(6) witness.  At the time her deposition was taken, Chicago Title intended to designate excerpts of the videotape depositions for use as admissions and for impeachment purposes at trial.  Although the videotape was only used once for impeachment, the videotape served its purpose.  Credibility determinations can more readily be made with videotaped depositions than with written transcripts.  Thus, at the time the deposition was taken, Chicago Title deemed it necessary to have a videotape deposition for use at trial.

### 4.  Costs of Transcripts of Patricia Lyden's Trial Testimony.

True North also objects to Chicago Title's request for the cost of Ms. Lyden's trial transcript.  Again, True North failed to meet its burden to prove that the cost was not necessary. First, the transcript of her trial testimony was used by Chicago Title in seeking judgment as a matter of law on True North's fraudulent concealment claim (Dkt. # 92.), a motion that was granted.  Second, Ms. Lyden's trial testimony was very important for counsel's use in preparing for closing arguments and in preparing Defendants' witnesses for their testimony at trial.  The fact that Ms. Lyden's testimony frequently varied from deposition to trial testimony and even from moment to moment at trial demonstrates how necessary the trial transcript of her testimony was just to keep track of her ever-changing story.  Importantly, Chicago Title does not seek—nor did it obtain—daily transcripts for the entire trial.  Rather, it obtained only the testimony it

believed was necessary for its motion for judgment as a matter of law, preparing its witnesses, closing argument preparation, and/or any potential post-trial briefing.[7]

### 5.  The Room Rental Fee For Reesa Hedrick's Deposition Is A Taxable Cost.

"There is no question that deposition expenses may be taxed as costs" under 28 U.S.C. § 1920(2).  *Cooley*, 2011 U.S. Dist. LEXIS 22731, *174 (citing *Johnson v. Cleveland Sch. Dist.*, No. 1:07 CV 1610, 2009 U.S. Dist. LEXIS 13433, *3 (N.D. Ohio Feb. 3, 2009).  Ms. Hedrick is located in Houston, Texas.  For everyone's convenience, and to **minimize** expenses, all parties agreed to take Ms. Hedrick's deposition via videoconference.[8]  Ms. Hedrick informed Chicago Title's counsel that her office did not have videoconferencing capabilities.[9]  As such, a location equipped with the necessary technology had to be obtained through the court reporting agency taking Ms. Hedrick's testimony.  The costs charged for the "room usage" also included the cost of the video-conference technology required for the videoconference.  As such, the "room usage" fee is a taxable deposition expense.

### 6.  Witness Fees And Expenses For Jerry Green And Janet Fagan.

True North seeks to exclude witness fees for Mr. Green because he was Chicago Title's corporate representative during trial.  (Objection, p. 6.)  Relying upon *Hartford Financial*

---

[7] True North also complains that Chicago Title obtained both the "rough" realtime and final transcripts of Ms. Lyden's testimony.  Due to the short duration of the trial, Chicago Title was forced to cite to the "rough" transcript in its motion for judgment as a matter law because it had to be filed before the court reporter had an opportunity to finalize the transcript.  Chicago Title also ordered and obtained a final transcript of Ms. Lyden's testimony because it was unknown at that time whether a renewed motion or any other post-trial motions would need to be filed.

[8] Chicago Title could have taken the deposition live in Houston, necessitating counsel for both parties to incur significant travel expenses, as well as significant travel time.  Instead, Chicago Title sought the most cost-effective manner to take the deposition – one which was critical at trial and which obviously demonstrated Ms. Lyden's complete lack of credibility as a witness.

[9] Indeed, True North's counsel also did not have video-conferencing capabilities in his office and, as such, attended Ms. Hedrick's deposition in a video-conference room located at Collins Reporting Service in Toledo, Ohio.

*Services Group, Inc.*, supra, True North broadly asserts that federal law does not permit recovery of costs for officers that appear as corporate representatives. *Id.* The authority upon which True North relies, however, does not support True North's argument since, there, the court did tax costs for the corporate witness who served both as a witness and a corporate representative, excluding only those expenses wholly attributable to the witness's attendance as a corporate representative. *See Hartford Financial Services Group, Inc.*, 2007 U.S. Dist. LEXIS 22528, *32.

While Mr. Green served as Chicago Title's corporate representative at trial, he was also called as a witness—first by True North. Chicago Title anticipated calling Mr. Green in its case as well, and it was not clear when Mr. Green would be needed. He certainly needed to arrive in Toledo on the first day of trial (8/22/11) to be available as a witness on the second day of trial (8/23/11). The fact that he would not be needed as a witness until the third day of trial (8/24/11) could not have been anticipated. Additionally, since Mr. Green resides in Denver and he had to obtain a flight to return home (according to the airlines' schedules), the earliest he could have left was the day after he testified (8/25/11). Therefore, at least three of his five hotel nights and all of his travel, totaling $1,277.05, should be taxed against True North.[10] *Id.*

True North also erroneously argues that Chicago Title's recovery of costs is "limited to only recovering fees of up to the statutory witness fee per day and travel expenses up to 100 miles for the appearance of Mr. Green and Ms. Fagan at trial. (Objection, p. 6.) A prevailing party may recover fees for witnesses under 28 U.S.C. § 1920(3). "Such expenses include attendance, travel, and subsistence fees as specified in 28 U.S.C. § 1821." *Aubin Industries, Inc.*

---

[10] "Allowances for witnesses are not restricted to the days the witness actually testifies, but may also be awarded for each day the witness necessarily attends trial, time spent during delays and temporary adjournments, and the time necessary for travel to and from the place of attendance." *Hildebrandt v. Hyatt Corp.*, No. 1:02-CV-0003, 2006 U.S. Dist. LEXIS 59902, *28 (S.D. Ohio Aug. 24, 2006) (citing *Soberay Machine Equipment Co. v. MRF Limited, Inc.*, 181 F.3d 771 (6th Cir. 1999)).

*v. Smith*, No. 1:04-cv-681, 2009 U.S. Dist. LEXIS 55104 (S.D. Ohio June 15, 2009).  Pursuant to 28 U.S.C. § 1821(d)(1), "[a] subsistence allowance shall be paid to a witness when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day."  Under section 1821(c)(1), witness travel expenses may be taxed for "means of transportation reasonably utilized," including fares for a "common carrier at the most economical rate reasonably available." 28 U.S.C. §1821(c)(1).  And travel expenses are not necessarily limited to mileage of "up to 100 miles."  *See, e.g., Bendix Commer. Vehicle, LLC v. Haldex Brake Prods. Corp*., 1:09 CV 176, 2011 U.S. Dist. LEXIS 318 (N.D. Ohio Jan. 3, 2011) (awarding coach class fare for five necessary witnesses traveling from Germany).

In discussing the "100-mile rule," the Sixth Circuit has stated that "[i]n exercising its discretion in taxing witness fees, the 100-mile rule is a proper and necessary *consideration* on the part of the district court."  *Soberay Machine Equipment Co. v. MRF Limited, Inc*., 181 F.3d 759 (6th Cir. 1999) (awarding of costs to the prevailing party for travel expenses of witnesses who traveled from India to Ohio where witnesses were corporate employees) (emphasis added).  The "rule" is not a complete bar to the taxation of costs for travel exceeding 100 miles from the court.  Instead, "[i]n considering whether to allow expenses for traveling in excess of 100 miles, the court should consider the length of the journey, the necessity of the testimony, and the possibility of averting the travel expense."  *Hildebrandt v. Hyatt Corp*., No. 1:02-CV-0003, 2006 U.S. Dist. LEXIS 59902, *27 (S.D. Ohio Aug. 24, 2006).

True North identified both Ms. Green and Ms. Fagan as proposed trial witnesses (Dkt. # 43) and **sought Chicago Title's agreement** to voluntarily produce them at trial since they reside outside of this Court's subpoena power.  Indeed, **True North** called them as witnesses in this

trial.  As such, True North's argument that Mr. Green and Ms. Fagan's witness fees should be limited to "mileage of 100 miles each way" is, to put it mildly, disingenuous.

### 7. Chicago Title's Costs For Copies, Imaging, and Demonstrative Exhibits Are Taxable.

Pursuant to §1920(4), a prevailing party may tax as costs "[f]ees for exemplification and papers necessarily obtained for use in the case."  28 U.S.C. § 1920(4).  The itemizations provided in Chicago Title's Summary of Costs (Dkt. # 101-2) demonstrate that Chicago Title seeks recovery of only those costs related to copies for use at trial, copies of deposition exhibits, demonstrative exhibits, and documents produced during discovery—all of which were necessarily obtained for use in this case.

"Photocopies are necessary to the extent they 'were used as court exhibits or were furnished to the Court or the opposing counsel.'"  *Cooley*, 2011 U.S. Dist. LEXIS 22731 *173 (citing *Arthur S. Langenderfer, Inc. v. S.E. Johnson Co.,* 684 F.Supp. 953, 961 (N.D. Ohio 1988).  Improperly categorizing document imaging costs as "computerized litigation support," True North first argues that it "should not be required to pay for document imaging and scanning regardless of whether it was for document production during discovery."  (Objection, p. 7.) Chicago Title produced over 30,000 pages of documents in response to True North's incredibly burdensome and unnecessary requests for production of documents.  Ironically, in an effort to **reduce** costs, almost the entirety of Chicago Title's document production was made electronically with pdf copies of documents being forward to True North's counsel via email or on CDs.  The Sixth Circuit has stated that "electronic scanning and imaging could be interpreted as 'exemplification and copies of paper.'"  *BDT Products Inc.*, 405 F.3d at 420; *see also J-Way Leasing, Ltd.,* 2010 U.S. Dist. LEXIS 19390 at *9 (taxing costs for document imaging).  As such,

the fact that Chicago Title produced electronic **instead of** paper copies does not preclude it from recovering its "exemplification" costs from True North.

Additionally, because Chicago Title produced these documents at True North's request for discovery purposes, necessity is sufficiently established and Chicago Title is entitled to its costs. *Beck v. Buckey Pipe Line Services Co.*, No. 3:10 CV 319, 2011 U.S. Dist. LEXIS 80580, *7 (N.D. Ohio July 25, 2011). Finally, the reasonableness of the amounts Chicago Title seeks to recover is obvious since the costs itemized on the Bill of Costs attributable to imaging for document productions total only $1,041.03 for over 30,000 pages of production. A paper production of the same documents would have cost three times that amount, at the very least, plus costs associated with delivering said productions to True North. Thus, expenses were reduced by an electronic production and True North's arguments are simply frivolous.

True North next argues that it should not be required to pay for documents submitted to the Court as trial exhibits or used by witnesses at trial. (Objection, p. 7.) Pursuant to this Court's March 15, 2011 JERS Order (Dkt. # 32), each party was required to submit exhibits to the court prior to the trial. According to the JERS Order, trial exhibits also had to be marked (i.e., "branded") individually with exhibit numbers. The parties were also ordered to bring a set of trial exhibits to court for use at trial. (Dkt. # 31.) In an effort to efficiently provide the trial exhibits to the Court, Chicago Title's counsel agreed to submit **both parties' exhibits**, properly branded as required by the JERS Order, so the Court's copies would be uniform. (*See* 8/17/11 email exchange between Julie Douglas and Joni Todd, attached as Ex. B). Because the trial exhibits at issue were submitted to the Court and used at trial, they are necessary and taxable costs. *See Cooley*, 2011 U.S. Dist. LEXIS 22731 *173.

14

Finally, True North objects to the costs of printing Chicago Title's demonstrative exhibits.  (Objection, p. 8.)  Expenses incurred in creating exhibits are recoverable under 28 U.S.C. § 1920.[11]  *See, e.g., Amer. Trim. V. Oracle Corp.*, 230 F.Supp. 2d 803, 806 (N.D. Ohio 2002).  Chicago Title's demonstrative exhibits were utilized throughout trial—by both parties' counsel—and were provided to the jury for use during deliberations.  Thus, this is taxable cost.

## III.  Conclusion.

True North has failed to (1) defeat the presumption in favor of awarding costs to Chicago Title as the prevailing party in this action; and (2) meet its burden of proving that the costs presented on True North's Bill of Costs were not taxable, unnecessary, or unreasonable.  Therefore, Chicago Title respectfully requests this Court to tax costs in the amount of $14,718.88[12] against True North.

Respectfully submitted,

/s/ Steven A. Goldfarb

Steven A. Goldfarb (0030186)
sagoldfarb@hahnlaw.com
Joni Todd (0078768)
jtodd@hahnlaw.com
HAHN LOESER & PARKS LLP
200 Public Square, Suite 2800
Cleveland, OH 44114
Phone: 216-621-0150
Fax: 216-241-2824

---

[11] Federal courts "distinguish between conceptualizing and researching demonstrative exhibits, creating such exhibits, and presenting them at trial[,]" consistently ruling that while "litigants cannot recover expenses incurred in conceptualizing and conducting background research relating to demonstrative exhibits . . . [e]xpenses incurred in creating the exhibit are, however, recoverable." *Id.* (citing *Zuill v. Shanahan*, 80 F.3d 1366, 1371 (9th Cir. 1996) and *Romero v. City of Pomona*, 883 F.2d 1418, 1428 (9th Cir. 1989)).

[12] Chicago Title withdraws its request for costs for minuscripts of Mr. Green and Ms. Hott's deposition testimony.  These costs, as itemized on the Bill of Costs, total $50.00.  Chicago Title also reduces the amount of lodging costs it seeks relating to Mr. Green by $198.57.  As such, Chicago Title reduces the original amount of its total taxable costs identified in the Bill of Costs ($14,967.45) to $14,718.88 to be taxed against True North.

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing *Notice of Filing of Bill of Costs* was filed electronically on this 26th day of September, 2011.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.


/s/ Steven A. Goldfarb
One of the Attorneys for Defendants